UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JAROTH, INC.,                                          MEMORANDUM
                          Plaintiff,             AND ORDER
           - against -
JAMES MATTHEW WIGGINS,                                 16-CV-3506 (DLI) (JO)
                          Defendant.
-----------------------------------------------------------------------X

James Orenstein, Magistrate Judge:

Amber Prevost ("Prevost") moves to substitute herself for defendant James Matthew Wiggins ("Wiggins") on the ground that she is his successor as the trustee of the Collimates Irrevocable Trust Dated October 21, 2014 ("the Trust"). *See* Docket Entry ("DE") 116. For the reasons set forth below, I deny the motion.

I.      <u>Background</u>

Plaintiff Jaroth, Inc. ("Jaroth") has sued Wiggins in his capacity as the Trust's trustee to set aside an allegedly fraudulent transfer and collect on a judgment. In short, Jaroth alleges that its predecessor in interest obtained a one-million-dollar judgment against Torre J. Mercogliano ("Mercogliano") in 2008 and has been trying to collect it ever since. It further alleges that Mercogliano sought to shield certain assets against collection by fraudulently transferring them to the Trust. *See* DE 109 (Amended Complaint) ("Complaint") ¶¶ 2-3, 6, 8-20. Wiggins owns Corporate Nevada, an entity that "does LLCs, incorporations … for people looking to incorporate certain business for asset protection." DE 138-1 (transcript of hearing dated Oct. 18, 2018) ("Tr.") at 6. Movant Prevost is Corporate Nevada's "vice president of operations" who "does most of the paperwork and filings and does consulting work there." *Id.* at 7.

On August 2, 2018, after the completion of discovery, Jaroth sought leave to move for summary judgment against Wiggins. DE 106. When Wiggins responded on August 7, 2018, he claimed to have resigned as trustee effective December 5, 2017, and that Prevost was now the

trustee. DE 111 at 2. Prevost then filed the instant motion on September 17, 2018. DE 116. I held a hearing on the motion on October 18, 2018. *See* DE 137 (minute entry). The parties submitted post-hearing briefs on November 30, 2018. *See* DE 138 ("Wiggins Memo.")[1]; DE 139 ("Jaroth Memo.").

On October 22, 2014, Wiggins, Mercogliano, and Mercogliano's wife, Chong Mercogliano, all executed the Collimates Irrevocable Trust Agreement. *See* DE 13-1 (the "Agreement").[2] The Agreement designates Mercogliano and his wife as the trustors, and the Mercoglianos' two minor children as the Trust's primary beneficiaries. *See id.* arts. IV-V.

The Agreement further names Wiggins as the Trust's sole trustee – and as far as the record reveals he remained the sole trustee until the time when he purported to have appointed Prevost as his successor. *See id.* art. XI § A. The Agreement also prescribes specific procedures for a trustee who seeks to appoint a successor and resign. To be effective, a trustee's appointment of a successor "shall be by a notarized written instrument attached to this Agreement." *Id.* art. XI § C(1). Upon appointing a successor, a trustee can effectively resign only by providing "written notice to the current beneficiaries and to the successor Trustee designated in this Trust Agreement. The resignation shall be effective upon acceptance of appointment by the designated successor Trustee." *Id.* art. XI § K.

---

[1] Jaroth moved to strike Wiggins's brief because its author is not counsel for Wiggins in his capacity as trustee (and therefore as the defendant in this case), but rather represents him only in his individual capacity. *See* DE 140; *see* Fed. R. Civ. P. 11(a) (requiring every submission to bear the signature of a party's attorney or the party personally if the party is unrepresented). I deny that motion and will consider Wiggins's brief. As set forth in my order of December 3, 2018, attorney Jeremy Stein, the brief's author, has repeatedly identified himself as counsel for "Defendant" Wiggins, and Wiggins is sued only in his capacity as Trustee. In the same order I noted that Mr. Stein may seek to withdraw as defendant trustee Wiggins's counsel of record under Local Civil Rule 1.4, but he has never done so. In any event, the resolution of the motion to strike has no effect on my resolution of Prevost's motion to substitute.

[2] The Agreement's first page and title includes the date of October 21, 2014, while the signature lines and notary certifications are dated October 22, 2014. *See id.* at 1, 60-64. The difference is immaterial.

Wiggins did not adhere to the Agreement's prescribed procedures. Instead, on December 5, 2017, he sent an email to Mercogliano in which he wrote the following, in relevant part:

> After speaking with my attorney I am sorry to inform you that I must step down as trustee from The Collimates Trust effective immediately. I am noticing you due to the fact that the beneficiaries are minors and you are their legal guardian. We need to find a new trustee immediately who can take over the day to day operations of the trust and take over signing authority for the bank account.

DE 112, Ex. C. As the email's text makes explicit, Wiggins purported to have resigned without having appointed (and thus, necessarily, without having notified) a successor. *See also* Tr. at 24 (confirming that no successor Trustee was named).

Even after sending the email quoted above, Wiggins continued to be a signatory on the Trust's bank account and the Trust's investment and distribution adviser. *See* Tr. at 54; Agreement art. XI § F(1)-(2). However, he stopped writing checks for the Trust, despite having written checks on at least a weekly basis for the prior four years. *See* Tr. at 39.

The Agreement provides a mechanism for the Trustors to fill a vacancy in the position of trustee. *See* Agreement art. XI § D(1). Nevertheless, for six months after Wiggins's email, Mercogliano took no action to replace him. Finally, on June 5, 2018, Mercogliano named Prevost as Trustee and entered into a fee agreement with her. *See* Tr. at 91, 101; DE 142-3 (Plaintiff's Ex. D at hearing).[3] The next day, Prevost notarized a document in which Wiggins purported to "resign on

---

[3] Mercogliano purported to appoint Prevost only after it appeared that other attempts to frustrate Jaroth's efforts to litigate this action would be in vain. After extensive discovery delays – *see* DE 22 (partially granting Jaroth's motion to compel); DE 36 (denying defendants' motion to compel and granting Jaroth's motion for a protective order); DE 43 (granting Jaroth's motion to compel); DE 58 (granting extension of discovery to allow defendants to complete disclosures and denying defendants' requests for other delay); DE 62 (denying defendants' requests for further delay) – Wiggins purported to resign and the Trust took the position that this court lacked diversity jurisdiction because it, like Jaroth, is domiciled in California. *See* DE 112 at 3. The Trust based that position on the assertion that the beneficiaries are California residents. After being confronted with the reality that a Trust derives its capacity to litigate and its domicile from its Trustee, Mercogliano purported to appoint Prevost as trustee. At that point the Trust asserted that the parties were not diverse because Prevost, "the proper defendant … is domiciled, or would soon be domiciled, in

3

December 5, 2018 [sic]" and wrote that "[b]efore resigning, I appoint Amber Prevost … as successor Trustee." DE 142-2 (Ex. C from hearing); *see* Tr. at 25-26. Wiggins did not send the latter document to the Trust's beneficiaries. *See id.* at 56 (Wiggins's testimony that he never sent anything to either beneficiary).

II.   Discussion

Rule 25(c) of the Federal Rules of Civil Procedure provides that: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). Prevost should therefore substitute for Wiggins if she effectively replaced him as trustee. As explained below, she did not. Wiggins did not comply with the Agreement's provisions concerning resignation and his purported resignation was therefore ineffective. As a result, Mercogliano had no vacancy to fill when he purported to appoint Prevost as successor trustee.

The Agreement requires a trustee who seeks to resign to provide written notification to the beneficiaries. Agreement art. XI § K. Even assuming an email to be the effective equivalent of written notice, Wiggins sent his email to one of the two trustors, not to the beneficiaries as required. Wiggins argues that because the beneficiaries were minors when he sought to resign, he was not required to notify them because the laws of both California and Nevada prohibit minors from entering into contracts. *See* Wiggins Memo. at 4-5 (citing Cal. Fam. Code §§ 6500, 6701; Nev. Rev.

---

California." *Id.* Although the Trust sought to fudge Prevost's actual domicile by submitting a declaration in which she described herself as "the Trustee of Defendant Collimates Irrevocable Trust, with an address at 531 North Lake Blvd., Tahoe City, CA 96145," *id.* Ex C ¶ 1, the record is clear that she resides in Nevada, that the Trust is a Nevada entity, and that the parties are therefore diverse. *See* Tr. at 61, 90. Regardless of whether Wiggins's purported resignation or Prevost's purported appointment were engineered as part of an ultimately failed effort to obstruct this litigation, as explained below I conclude that as a legal matter, the maneuvers were ineffective.

4

Stat. §§ 129.010, 129.130).[4] But Wiggins was not seeking to enter into a contract with the beneficiaries; he was attempting to resign as trustee. Nevada's laws concerning the administration of trusts do not explicitly address the question of whether a trustee's notice can or should be sent to a minor beneficiary. But I agree with Jaroth that the more apt analogy is not to contract law, but rather to Nevada laws concerning transfers to minors. *See* Jaroth Memo. at 5-6. Specifically, Nevada law provides that the custodian of property gifted to a minor – who, like a trustee under the Agreement here, serves as a fiduciary for a minor's interests – may resign "by delivering written notice to the minor, if the minor has attained the age of 14 years, and to the successor custodian and by delivering the custodial property to the successor custodian." Nev. Rev. Stat. § 167.080. Because the Trust's beneficiaries were older than fourteen at the time of the purported resignation, there is no reason to conclude that Wiggins was absolved of his obligation to serve written notice of his intent to resign on the beneficiaries.[5]

Wiggins also violated the Agreement's terms in a more fundamental way by failing to appoint and then notify a successor trustee. The resignation provision, by requiring notice to a successor, manifestly contemplates that Wiggins, as sole trustee, could not effectively resign without a successor already in place to take over his duties. The Trust's purpose is "to provide appropriate management of the Trust property for the long-term interests of the Primary Beneficiaries."

---

[4] The beneficiaries – Mercogliano's two children – were fifteen and seventeen years old, respectively, on December 5, 2017, when Wiggins purported to resign via email to Mercogliano. *See* Tr. at 45. Agreement art. IV.

[5] The foregoing analysis suffices to dispose of Wiggins's contention that he was not required to provide notice of his resignation to the beneficiaries. Other parts of the Agreement only serve to bolster that conclusion. For example, while the Agreement does not make the beneficiaries' right to notice of the trustee's resignation dependent on their age, it does explicitly set a minimum age for the beneficiaries to exercise the right to remove or replace a trustee. *See* Agreement art. II § D. Thus, in signing the Agreement, both Wiggins and the Mercoglianos plainly knew how to make the beneficiaries' ages a factor in determining the parties' rights and responsibilities – and just as plainly decided not to do so with the requirement that a trustee notify the beneficiaries of his resignation.

Agreement art. VI § A. Likewise, as the initial and sole trustee, it is Wiggins's "duty … to further the long-term welfare of the Primary Beneficiaries." *Id.* Wiggins would frustrate the Trust's purpose and violate his duty by resigning without ensuring that a successor was ready to replace him.

I therefore conclude that Wiggins has never effectively resigned as trustee. As a result, there has been no transfer of interest for purposes of Federal Rule of Civil Procedure 25, and accordingly no basis for any substitution. For much the same reason, Mercogliano's purported appointment of Prevost as trustee is also ineffective. The Agreement's sole provision for the trustors to appoint a trustee (aside from the provision designating Wiggins himself by name as the original and only trustee) explicitly only applies "in the event of a vacancy in the office." *Id.* art. XI § D(1). Because Wiggins never effectively resigned, there was never a vacancy, and so Mercogliano never had any authority to appoint his successor. As a result, Prevost cannot replace Wiggins as the defendant.

III.  Conclusion

For the reasons set forth above, I deny the motion for substitution.

SO ORDERED.

Dated: Brooklyn, New York
March 5, 2019

_____/s/_____
James Orenstein
U.S. Magistrate Judge